DENNIS TIGHE
MAXON R. DAVIS
DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.
The Milwaukee Station, Third Floor
101 River Drive North
P.O. Box 2103
Great Falls, Montana 59403-2103
Telephone: (406) 761-5243
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
LYNNETTE NIGRO,

               Plaintiff,                  CAUSE NO. 07-128-M-DWM

   -vs-

                                                  DEFENDANT'S TRIAL BRIEF

BRIDGESTONE AMERICAS HOLDING, INC.,

               Defendant.
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

STATEMENT OF THE CASE

Nigro alleges that she was injured in a motor vehicle accident on December 31, 2004 while driving north on the 1-17 freeway just outside of Phoenix, Arizona. She contends that the Firestone[1] store in Phoenix had not tightened the lug nuts on her

---

[1] The correct name of the defendant is BFS Retail and Commercial Operations, LLC, hereinafter, "Firestone."

1996 Ford Explorer after a tire rotation, and that the car went out of control when the nuts simultaneously came loose on the right front and left rear tires. The tires did not come off her car.

She contends that the car went out of control at approximately 65 mph when it violently jerked to the right and then to the left causing her car to spin around an unknown number of times and come to rest facing against traffic partly in the right hand emergency lane and partly in the slow lane. No other car was involved in the alleged accident.

She says that a highway patrol officer stopped[2] and assisted her by jacking up the front and also the back of her car and tightening the remaining lug nuts. The officer then had her back up, turn around and drive down an off ramp which was immediately adjacent to where she had stopped. She contends that her car was disabled, and she could not drive it, so she pulled off the ramp and parked. The highway patrolman left. There is no record of a highway patrol report or accident report.[3]

Nigro said that she called her friend who, in turn, called the Firestone store

---

[2] The police officer is not mentioned in the Complaint nor the Preliminary Pretrial Statement. She did not say anything about an officer when she spoke to Firestone personnel in January and February, 2005. The unknown highway patrol officer is first mentioned in Plaintiff's discovery responses in July, 2008.

[3] Arizona law provides that "every law enforcement officer or public employee" shall complete a report of a motor vehicle accident where there is personal injury, A.R.S. §28-667(A), or property damage of "one thousand dollars or less." A.R.S. §28-667 (B).

and the store ordered a wrecker to pick up her car. The car was delivered to the Firestone store late that night. The Firestone store inspected the car on January 2 and replaced five chrome lug nuts and removed and replaced 1 lug stud. Nigro was told to come pick up her car, but she refused. She demanded that Firestone replace the right front brake rotor and have the car inspected by an independent garage chosen by her. Firestone district manager, Mike Bird, authorized a rental car, the replacement of the rotor and the independent inspection, and the car was towed to Bell Ford in Phoenix.

The inspection showed no damage. The right front wheel bearing was replaced because it was making noise. Nigro admits that her car was making noise on the right front before she took it to Firestone. The car had 146,586 speedometer miles on it when it was first brought to Firestone.

In January, 2005, Nigro spoke a number of times with Firestone personnel. She spoke with district manager, Mike Bird, assistant district manager, Clay Bukovics, personnel at the Firestone store and claim representative Penny Finegan. She also left voice messages with Penny Finegan and emailed a complaint to the Firestone MasterCare website. She emailed Bukovics after returning to Montana later in January. She also emailed a complaint to the Phoenix Better Business Bureau. In all of these communications, she <u>did</u> <u>not</u> complain that she had been physically injured. She <u>did</u> <u>not</u> complain that a pre-existing problem was exacerbated. She did complain, however, that "master mechanics" told her that her

3

car was damaged. She demanded that Firestone purchase her car and buy her and her son a plane ticket home, which it refused to do.

In 2005, Nigro went to her appointments with her regular medical providers at Partnership Health Center. There is no mention in the records of an accident, injury or treatment by a chiropractor.

In late February, 2005, she was treated by chiropractor, James Kostecki. She told Kostecki that her neck and low back hurt from the alleged accident in Phoenix. She told Kostecki that immediately after the accident, she had a headache and was "so sore and tender with a severe HA, she was vomiting." She said that her pain was at a level of 6-7 out of 10 and scaled to 8 with her headache. Kostecki was not told that she had preexisting, chronic low back pain.

In November, 2005, after Nigro returned from a trip to Phoenix for her mother's funeral, she went to Kostecki with a stiff, painful low back. He performed a chiropractic manipulation that caused immediate, debilitating pain which required extensive treatment and eventual surgery. Nigro's total medical bills exceed $125,000.

Firestone denies liability. The evidence does not support the conclusion that Nigro was in an accident or that she was injured in an accident. Even if she was injured, her only treatment was chiropractic manipulation from February to September, 2005. Firestone is not liable for the injury caused by Kostecki's manipulation of Nigro's low back. As of the end of September, 2005, her back was at

its normal condition, and Kostecki injured her almost two months later in November, 2005.

## TRIAL TESTIMONY ISSUES

### EXPERT TESTIMONY

#### Vehicle Handling

Firestone has retained Richard Fay of Fay Engineering to give opinion testimony about vehicle handling when lug nuts are loose. It is his opinion that loose lug nuts without the wheel coming off the car do not cause a motor vehicle to go out of control. The absence of physical damage to Nigro's car and tires corroborates his opinion that the car was not involved in an accident as she describe.

Nigro has retained Denman Lee as a rebuttal expert. His expected testimony from this expert disclosure is limited to his opinion that Richard Fay cannot provide an opinion without experimentation. Denny Lee should be prohibited from giving any opinions beyond the scope of his expert disclosure.

#### Medical Causation

Nigro has not identified a medical expert to give opinion testimony that the alleged accident was the cause of Nigro's complaints. Pursuant to the Court's scheduling order, the treating physicians' testimony is limited to care, treatment and prognosis. Nigro does not have a medical expert to give opinion testimony about whether Kostecki was treating her for preexisting, chronic low back pain or an exacerbation of her chronic low back problem or a new injury. Nigro is not

5

competent to give an opinion on medical causation here. Cain v. Stevenson (1985), 218 Mont. 101, 706 P.2d 128. The Court held in Cain that lay testimony was inadmissible to prove causation when the alleged injury does not appear to be accident related. Id. at p. 131 ("lay testimony is not sufficient to establish cause for those aspects of an injury not apparently related to the accident in question." ). Medical testimony was needed for prognosis and probable permanent disability. Id. Nigro can testify about her past and present condition. Id. She cannot, however testify about causation under the circumstances because she did not relate any physical injuries to the December 31, 2004 event at the time of the event.

Economic damages

Nigro has not identified an economist or any other person to give opinion testimony about her damages or lost wages. Nigro was self-employed, and her tax records from 2001 through 2005 show that on average, her expenses exceeded her gross income.

UNDISCLOSED CAUSATION OPINIONS

Gilbert Roberts, a chiropractor, treated Nigro in 2007. Nigro identifies his records as a possible exhibit. Roberts' records have opinions which are not limited to care, treatment and prognosis. In his records, he gives an opinion on the treatment provided by Kostecki, and he also gives an opinion on the cause for Nigro's low back problem. Since Roberts is not listed as an expert except insofar as care, treatment and prognosis, he should not be permitted to give opinion testimony about causation

6

or whether Kostecki breached a standard of care.  Robert's testimony and records regarding these opinions should not be admitted.

### COMPROMISE OFFERS ARE NOT ADMISSIBLE EVIDENCE ON ISSUE OF LIABILITY

The customer service documents from Bell Ford and Firestone may be offered into evidence.  Defendant's witnesses will testify that when Nigro complained about damage to her car after the alleged accident, the Defendant agreed to have the car inspected by a third party chosen by Nigro (Bell Ford) and to have one rotor and wheel bearing replaced, all free of charge to Nigro.  The customer service records cover the inspection and service work.  The witnesses will testify that they agreed to these things to try to satisfy a customer, but not because they admitted liability.  Pursuant to Rule 408, F.R.Evid., the testimony and reports should not be admitted as evidence of liability.

### ABSENCE OF AN ACCIDENT REPORT

The Arizona public safety authorities have no record of Nigro's alleged accident on December 31, 2004.  Nigro has obtained a memo from the Arizona Department of Public Safety which states, in part, that records from that long ago have been purged. Defendant challenged the authenticity of the memo, which was then augmented with a statement certifying that it was authentic.  The memo includes statements of opinion in addition to information that records are purged.  Information beyond a statement of the administrative function of record keeping is inadmissible hearsay.

DATED this 29th day of January, 2010.

                DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.


                By  /s/ Dennis Tighe
                   DENNIS TIGHE
                   Attorneys for Defendant


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was duly served upon the following by mail, hand delivery, Federal Express, facsimile transmission or electronic transmission, as indicated:

| | | |
|---|---|---|
| Terry J. MacDonald | [ X] | CM/ECF |
| Joyce, Johnston & MacDonald, PLLP | [ ] | U.S. Mail |
| 321 W. Galena, Ste. B | [ ] | Federal Express |
| Butte, MT 59701 | [ ] | Hand Delivery |
| Attorneys for Plaintiff | [ ] | Facsimile Transmission |
| | [ ] | Electronic Transmission |

this 29th day of January, 2010.

                DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.

                By  /s/ Dennis Tighe
                   Dennis Tighe
                   Attorney for Defendant